## Associated Sanatorium v. James, Auditor.

(Decided June 21, 1911.)

### Appeal from Franklin Circuit Court.

1. Under Section 4711a, Kentucky Statutes, there are two limitations upon the amount to be drawn by a sanatorium from the State: (1) It must not exceed twenty per cent. of the cost of erecting and equipping the sanatorium or an enlargement of it; (2) it must not exceed $350 annually for each bed maintained in the sanatorium for patients.

2. The amount which has been expended by the sanatorium in maintenance is not to be considered in estimating the twenty per cent. although the plant has been enlarged.

3. It is not necessary that a bed should be occupied continuously; if the bed is maintained in good faith for patients it may be counted.

BERNARD FLEXNER and JOHN MARSHALL for appellant.

JAMES BREATHITT, Attorney General and THEODORE B. BLAKEY, Assistant Attorney General for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE HOBSON—Affirming.

Section 4711a, Kentucky Statutes, among other things, provides:

"(1) That there is hereby appropriated out of any money in the treasury not otherwise appropriated, the sum of twenty-five thousand ($25,000) dollars for the benefit of the Association Sanatorium of Jefferson County, Kentucky, and any similar sanatorium or sanatoria establishment in this Commonwealth for the care and treatment of consumptives to be paid to such sanatoria as hereinafter provided.

"(2) The Auditor of Public Accounts be, and he is hereby authorized and directed to draw his warrants upon the treasury in favor of the Treasurer of the As-

sociation Sanatorium on June 1, 1908, for the sum of fifty-six hundred ($5,600) dollars, and annually thereafter said Auditor of Public Accounts be, and he is hereby authorized and directed to draw his warrants upon the treasury in favor of the Treasurer of the Association Sanatorium for the sum of fifty-six hundred ($5,600) dollars, unless said Association Sanatorium is entitled to more than said sum as hereinafter provided; the sum of fifty-six hundred ($5,600) dollars being twenty (20) per cent. of the total sum expended by the said Association Sanatorium in equipping and establishing its sanatorium.

"(3) Any other sanatorium incorporated, established and equipped within this Commonwealth by private contribution for the care and treatment of consumptives, the articles of incorporation of which provide that it shall not be operated for profit, shall be entitled to receive out of the fund herein appropriated, annually, a sum equal to twenty (20) per cent. of the amount actually expended by said sanitorium in establishing and equipping such sanatorium, and the Auditor of Public Accounts is authorized and directed to draw his warrants upon the treasury in favor of the Treasurer of any such sanitorium for such an amount, after such sanatorium has complied with the provisions of this act.

"(4) No sanitorium embraced within the provisions of this act shall be entitled to receive in any one year an amount of money out of the appropriation herein made, in excess of three hundred and fifty ($350) dollars per year for each bed maintained for patients by such sanitorium, and no sanitorium shall be entitled to receive any part of the appropriation herein made unless such sanitorium is actually established and is receiving and caring for persons suffering from consumption and has been in actual operation for a period of six months.

"(6) Any sanitorium embraced with the provisions of this act, which, in an effort to care for more persons suffering from consumption, shall enlarge the sanatorium maintained by it, shall be entitled to the benefits of this act with reference to such improvements, it being the intention of the General Assembly of the Commonwealth to grant financial aid to any sanatorium within the Commonwealth equipped and maintained for the care of consumptives as herein provided, to the extent of

twenty (20) per cent. annually of amount actually paid and expended in equipping and maintaining such sanatorium; provided always that such aid rendered by the Commonwealth shall not in the aggregate amount to more than three hundred and fifty ($350) dollars per year per bed, maintained for patients in such sanatorium.''

The fifth section provides that no part of the appropriation shall be paid until a certain bond is executed and certain sworn statements are made by the officers of the institution, and these have been approved by the State Inspector. The seventh section provides for reports by the institution and the eighth provides for the examination of their books and records by the State Inspector.

The Association Sanatorium brought this suit against the Auditor setting up facts showing that it has complied with the act, and is entitled to aid from the State as therein provided; that it had expended in establishing and equipping its plant $28,000 and maintained sixteen beds for patients; that the Auditor had paid it $5,600 as of date June 1, 1908; also $8,419.38 as of June 1, 1909; that prior to April 1, 1909, it had only sixteen beds, but that on April 1, 1909, it completed a new shack containing ten additional beds, the shack having been in course of construction for some months prior to that date; that on April 21, 1909, it became available for patients who prior to that time had been on the waiting list and that within a very short time thereafter and prior to June 1, 1909, the ten additional beds were actually occupied by patients suffering from tuberculosis. But that on June 1, 1910, the State Inspector and Examiner certified that the net amount which the plaintiff was entitled to receive as of June 1, 1910, was $5,317, but that it had expended in equipping and maintaining the sanatorium the sum of $41,581.90 exclusive of the aid received from the State and it was in fact entitled to receive $8,316.38, less $1,459.88, the amount theretofore overpaid by the State through a mistake; that the Auditor had refused to pay any more than as certified by the examiner, when in fact there was due it the net amount of $6,676.50 and not $5,317 as certified by the State Inspector. Judgment was prayed for a mandamus against the Auditor compelling him to issue a warrant for the amount claimed by the sanatorium. The circuit court dismissed the petition and the sanatorium appeals.

The record presents for decision these questions: What limitations are imposed by the act on the amount the sanatorium is to receive annually from the State? After the sanatorium was enlarged by the building of the shack, should the 20 per cent. under section 6 be counted on money spent for maintenance? Is a bed maintained for patients by the sanatorium within the meaning of the act, unless it is occupied by a patient?

The State Inspector construed the statute as meaning that if any bed was not continuously occupied, there should be a deduction at the rate of $350 a year for the time it was unoccupied. The sanatorium insists that it should have $350 a year for each bed so maintained for patients whether it was in fact occupied all the days of the year or not.

We have examined the statute with care and our conclusion is that the sanatorium is entitled under the second section annually to draw from the treasury 20 per cent. of the total sum expended in equipping and establishing the sanatorium; that by the third section, any other sanitorium of a similar kind is entitled to draw money in like manner from the State; that the fourth section is a limitation upon the second and third sections, and that if twenty per cent. of the sum expended in equipping and establishing the sanatorium exceeds $350 for each bed maintained for patients by the sanatorium, then it can only draw for the number of beds so maintained at the rate of $350 a year; that by the sixth section, any sanatorium which in an effort to care for more persons suffering from consumption shall enlarge its plant shall be entitled to the benefits of the act with reference to such improvements; that is, after such improvement is made, it may draw from the State annually twenty per cent. of the amount expended in establishing and equipping the improvement, but not to exceed $350 a year for each bed maintained for patients by the sanatorium. The act taken as a whole evidences a purpose by the State to contribute to the maintenance of these institutions after they have been established and equipped and are receiving and caring for persons suffering from consumption and have been in actual operation for a period of six months. When such an institution enlarges its plant, it is entitled to the increased allowance from the time that the improvement goes into use in the care of consumptives. There are two limitations upon the amount to be paid by the State. (1) The

amount is not to exceed twenty per cent. on the sum expended in establishing or equipping the plant, or in establishing or equipping the enlargement of it, and (2) it is not to exceed $350 a year for each bed maintained for patients by the sanatorium. Although appellant maintains twenty-six beds for patients it is not entitled to be paid $350 a year for each bed if this sum exceeds twenty per cent. of the cost of establishing and equipping the original plant and the cost of establishing and equipping the shack. It is true that the sixth section uses the words "equipping and maintaining," where the other sections use the words "equipping and establishing;" but in the sixth section these words occur only in an explanatory clause and were obviously not intended to change the meaning of the previous sections. The purpose of the sixth section is to make the same allowance for money spent in enlarging a plant as in its original construction and equipment. The enlargement is put on the same footing as the original plant, but it was not intended that a sanatorium enlarging the plant should thereafter draw 20 per cent. on the amount it had spent for maintenance. The purpose of the State is to aid in the maintenance of the sanatoria, and it measures its aid in all cases by the amount spent in construction and equipment or in the enlargement of the sanatorium. If the State paid annually 20 per cent. of the amount spent in maintenance, the amount to be paid by the State would grow annually by arithmetical progression in favor of the sanatoria that enlarged their plants, while those not enlarging would be paid on a different basis. This was not intended.

It is not necessary that a bed shall be occupied by a patient every day in the year and it was not contemplated by the act that the time a bed was not so occupied should be deducted. No bed can be counted which is not in good faith maintained for patients by the sanatorium and if a bed or beds were not in fact so occupied as to show that they were in good faith maintained in the sanatorium for patients, no allowance should be made therefor. If a sanatorium maintains more beds for patients than are reasonably necessary for the patients in fact cared for, no allowance should be paid for the unnecessary beds. This will be shown by its books and a showing may be required before any allowance is approved by the Inspector or paid by the Auditor. The State is protected by the limitation of 20 per cent. upon the cost

of establishing and equipping the plant or any enlargement of it. It is also protected by the bond which is required to be given; by the examination which is required to be made of the books of the sanatorium by the State Inspector, and by the sworn statements required to be made by the officials of the institution. It will be observed that appellant had spent $28,000 in equipping and establishing its plant. Twenty per cent. of this sum is $5,600, which is allowed it by the State. It will also be observed that appellant then had sixteen beds maintained for patients and sixteen times $350 is also $5,600, thus showing that the Legislature intended to allow appellant for the beds it maintained for patients not the beds that were actually occupied by patients during the time they were so occupied; for in every institution there must be some interval of time after one patient is discharged before another is received. The purpose of the act is to provide for the treatment of this unfortunate class of persons whose presence in the community is a menace to the safety of others, and the statute should not receive a construction which would impair its efficiency. It is better that a bed should be unoccupied for a short time than that the institution should keep patients waiting who have applied for admission. Taking the act as a whole we are satisfied that the words "each bed maintained for patients" were used in their ordinary and natural sense as applying to beds kept for the use of patients and not for the use of the attendants or others. No aid can be demanded from the State until by private charity the institution has been established and equipped and then only 20 per cent. of the amount so expended, not exceeding $350 a year for each bed maintained in good faith for patients. It seems to us there can be no great danger of the State suffering from imposition with the safe-guards thrown around the appropriation by this act.

It appears, however, that the appellant only spent about $1,100 in erecting and equipping the shack, and on the face of its petition it does not appear that it was entitled to more than it has received. Its claim to $6,-676.50 asserted in the petition seems to be based on the ground that it was entitled to 20 per cent. annually on the amount expended in equipping and maintaining the sanatorium, when as we have seen, the sum previously spent in maintaining it. can not be considered, and though it has twenty-six beds maintained for patients, it

is not entitled to receive from the State annually more than 20 per cent. of the amount expended in erecting and equipping the sanatorium and in enlarging it.

Judgment affirmed.